WOHLMUTHER, ᴇᴛ ᴜx. *v.* MT. AIRY PLUMBING
& HEATING, INC., ᴇᴛ ᴀʟ.

[No. 466, September Term, 1965.]

322

*Decided November 10, 1966.*

*Motion for rehearing filed on December 12, 1966, denied on December 15, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and FINAN, JJ.

*Benjamin Swogell* for appellants.

*Robert J. Cooke* for appellees.

FINAN, J., delivered the opinion of the Court.

On March 29, 1963, the appellees, Mt. Airy Plumbing & Heating, Inc., hereinafter referred to as Mt. Airy, and County Floor Service, Inc., hereinafter referred to as County Floor (both having the same president and common business office), filed separate mechanics' liens in the Circuit Court for Baltimore County, in the amounts of $2,385.00 and $503.00 respec-

tively against property, improved by a dwelling house, located on Deer Park Road, title to which was then vested in the appellants, August Wohlmuther and Jennie M. Wohlmuther, his wife, by virtue of a deed dated October 5, 1962, in which Johnnie Martinez and Carolyn Martinez, his wife, appear as grantors.

On March 5, 1965, appellees filed separate bills of complaint on each lien, in the Circuit Court for Baltimore County, requesting the Court to appoint a Trustee to sell the property at public auction, so that satisfaction could be obtained on the liens, pursuant to the procedure provided in Art. 63, sec. 11, *et seq.,* Code (1957).

The appellants in their defense raised the following three issues that (1) there has not been statutory compliance with the requirement that the property owner be served with notice by the contractor of his intent to file a mechanics' lien, Art. 63, sec. 11, Code (1957); (2) the mechanics' liens had not been recorded within the time prescribed by law and (3) payment, of the amounts represented by the liens, had been made in full.

The Chancellor, after taking testimony, and delivering a two sentence oral opinion favoring the appellees, signed a decree, August 13, 1965, recognizing the validity of the mechanics' liens in favor of Mt. Airy in the amount of $1885.00 with interest thereon from March 29, 1963 and County Floor in the amount of $493.00, with interest thereon from March 29, 1963, and appointed a Trustee to effect the sale of the subject property at public auction, from which decree the appellants have taken this appeal.

The testimony in the record shows that Mt. Airy commenced work on August 1, 1962 and County Floor on September 28, 1961 and in each instance the work was performed pursuant to a contract with one Johnnie Martinez. Both appellees had done work on previous occasions for Martinez, who was known in the trade as a home builder, on a "running open account" basis.

The record reveals that at the time each of the appellees commenced the performance of their work on the subject property, title to the property was vested in Johnnie Martinez and Carolyn Martinez, as tenants by the entireties, by virtue of a

deed from Grey Dawn Development Company, Inc. dated July 6, 1961. The record further discloses that Johnnie Martinez, et ux., continued to hold title to the property until the date of the conveyance to the appellants on October 5, 1962.

The work on the property was financed by a construction loan in the amount of $13,500.00 advanced by Admiral Homes Acceptance Corporation to Johnnie Martinez, et ux., and secured by a deed of trust dated July 6, 1961.

There is evidence in the case that a contract for the sale of the property had been executed between The Grey Dawn Development Company, Inc. and the appellants on June 5, 1962, and an effort was made by the appellants to show that Johnnie Martinez was not the owner but was acting on behalf of The Grey Dawn Development Company, Inc., however, it was not denied nor the fact contravened that Johnnie Martinez, et ux., held the legal title to the property throughout the construction period.

The court below in its opinion employed only the most general terms in sustaining the validity of the appellees' mechanics' liens, therefore, we must now assume that the Chancellor found that the appellees had met all of the statutory requirements set forth in Article 63, sec. 11, *et seq.,* Code (1957). We must also presume that the Chancellor after crediting the appellants with payments of $500.00 on the Mt. Airy account and $10.00 on the County Floor found the remaining balance to be due and owing by the appellees.

i

It is interesting to note that in the hearing before the Chancellor, much testimony was adduced concerning the fact that the attempt to serve notice on the appellants within the ninety days from the completion of the work failed to comply with statutory requirements and notice was legally insufficient, the appellees countered by endeavoring to sustain the validity of the service. However, in argument on appeal, counsel for the appellees changed his theory of the case on the question of necessity of the notice of intent to file the lien, arguing that it was not necessary to serve any notice on the appellants, because the work was done directly under contract with the owner John-

nie Martinez and in such a case the statute does not require notice. The Court agrees with the appellees' contention in this regard both as to the law and its application to the facts as revealed in the testimony and exhibits; Article 63, sec. 11, clearly provides that such notice is necessary only when the work is done for some person other than the owner or his agent and the record clearly demonstrates that Johnnie Martinez and Carolyn Martinez were the owners, as well as prime contractors, accordingly this removed them from the notice requirement found in Art. 63, sec. 11 (a), which provides:

"If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within ninety days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien."

Although the question was not raised in the court below, or on appeal, regarding the fact that the subject property was owned by Johnnie Martinez and Carolyn Martinez, as tenants by the entireties and accordingly the wife should also have been a party to the contract with the appellees covering the improvements, yet, we think it is best to put to rest this possible objection.

An agency relationship between husband and wife will not be established merely by virtue of their marriage. *Twilley v. Bromley*, 192 Md. 465, 470, 64 A. 2d 553, 556 (1949). However, this is not to say that such a relationship cannot be established by other facts and circumstances. In *Grauel v. Rohe*, 185 Md. 121, 126, 43 A. 2d 201, 204 (1945), the Court quoted *Kvedera v. Mondravitzky*, 145 Md. 260, 264, 125 Atl. 591, 593 (1924), as follows: "If he acts with her authority, either expressly or impliedly conferred upon him, his acts are binding upon her; '* * * by subsequent ratification which under the principles of agency is equivalent to original authority.'"

It is a settled principle of Maryland Law that "knowledge by the wife of the husband's intention to construct a building on her land, together with her failure to interpose objection, are not sufficient circumstances to constitute agency." *Adkins & Douglas Co. v. Webb,* 160 Md. 571, 577, 154 Atl. 259, 262 (1931); *Bukowitz v. Maryland Lumber Co.,* 210 Md. 148, 153, 122 A. 2d 486, 488 (1956). In the instant case, the additional facts and circumstances, necessary to support a finding of agency, based upon implied authorization and subsequent ratification, go beyond mere knowledge on the wife's part of her husband's intention to incumber this property, jointly held as tenants by the entireties. The record shows that Mrs. Martinez entered into the deed of trust securing the construction loan and further that she personally signed one check dated August 18, 1961, in favor of County Floor, for work performed on the premises. Such affirmative action, on the part of the wife, is sufficient in our opinion to establish that Mr. Martinez was the agent of his wife in his dealings with the appellees. See *Duck v. Quality Custom Homes,* 242 Md. 609, 220 A. 2d 143 (1966) and *Kvedera v. Mondravitzky, supra.*

ii

The next issue raised in this case is whether or not the mechanics' liens were filed within six months after the completion of the work, as required by Article 63, sec. 23.

> "Every such debt shall be a lien until after the expiration of six months after the work has been finished or the materials furnished, although no claim has been filed therefor, but no longer, unless a claim shall be filed at or before the expiration of that period."

In the case of the appellee Mt. Airy work was begun on August 4, 1961, and continued intermittently until November 8, 1961. The work sheet then shows 5½ hours work by two employees on February 16, 1962, after which there is a long hiatus until September 27, 1962, when 3½ hours was done by one employee and again on September 29, 1962, when 3 hours work was done by one employee, this last instance being the final day on the job. A similar pattern was followed by the appellee, County Floor, with work commencing on September 28,

1961, and continuing intermittently until December 4, 1961, after which there was a gap until August 3, 1962, when 4 man hours were spent on the job and a further intermission until September 28 and 29, 1962, when 6 and 3½ man hours respectively were spent on the job; September 29, 1962, being the last and final day.

The obvious question is, with virtually total performance of the work to be done by both appellees having been accomplished by the late fall and winter, why the cessation of all work for seven months? Was the additional work and materials furnished seven months after the work had been substantially completed only a ruse to circumvent the statutory time limitation requiring filing of a lien within six months after the work had been completed? In other words was the last work on the job performed by both appellees on September 28-29, 1962, done only for the purpose of extending the time in which the liens could be filed?

Mr. Franklin, Manager of Mt. Airy, testified that the job was not finished on February 16, 1962, stating that there were "various little things that had to be finished before there could be a plumbing inspection of the job," and that "there was odds and ends to be tied together to get the job complete of which Mr. Martinez told us he would pay us when we finished." There was also testimony that on the last day of work a damaged control was replaced on the furnace. There was conflicting testimony as to whether or not Martinez requested the appellees to go back on the job, Martinez denying that he did; however, Mr. Ross, president of both appellees, when questioned by counsel stated:

> "Q. What caused you to go back in September of '62 and was there anything that caused you to go back, put it that way?
> "A. Yes, Mr. Martinez, the builder, had informed us that the house had been sold and that upon the settlement we would be paid in full.
> "Q. Was there anything for you to do there?
> "A. Yes, we had to complete the contract in order for him to make settlement for people to accept it and without acceptance we wouldn't be paid, so—

"Q. This is what was indicated to you?

"A. This is what was indicated to me by Mr. Martinez."

Access to the premises was obtained through a window in the rear of the dwelling, which witnesses for the appellee say was unlocked. Mr. Ross also stated that the employees of County Floor, on the 28th and 29th of September, 1962, installed or replaced some metal between the hardwood floors and linoleum at the thresholds, replaced some floor tile, possibly some wall tile and did some grouting (placing a white substance between tiles). He also testified that he thought this work was done by "Harry Horner, because he is the employee that we use quite a bit for cleanup work. In other words, * * * he's very familiar with that part of the business, he's very good on completing the contract to satisfaction."

Elsewhere in the testimony Ross, in explaining the lapse in continuity of the work, stated, "It was due to non-payment that we refused to progress with the work and (sic) we had payment in hand. In other words, we just simply pulled off the job."

Some doubt was cast on this line of testimony by Martinez and Mrs. Wohlmuther, who had inspected the house on occasions from May, 1962, until she occupied it in October 1962, and also by Mrs. Griffin, a realtor, who had the house listed for sale and who had inspected it, during the summer months of 1962. All thought that the work had been completed prior to September, 1962.

Yet, we must not lose sight of the fact that the Chancellor below had the opportunity to observe and hear all of these witnesses and it is the opinion of the Court that we must accept his finding of facts on this issue, since his findings are not clearly erroneous. Rule 886 a; *Eastern Heavy Constructors, Inc. v. Fox,* 231 Md. 15, 19, 188 A. 2d 286, 289 (1963). Nor, do we feel that the Chancellor erred in his application of the law to the facts on this issue.

In *Mt. Airy Plumbing & Heating, Inc. v. Grey Dawn Development Co.,* 237 Md. 38, 42, 205 A. 2d 299, 301 (1964), this Court in considering a very similar case between parties, some of whom are parties to the instant litigation, stated:

330

"It is true that we have said in such cases as *Harrison v. Stouffer,* 193 Md. 46, 51, 65 A. 2d 895 (1949), and *District Hgts. Apts. v. Noland Co.,* 202 Md. 43, 52, 95 A. 2d 90 (1953), that where the reason for the furnishing of small additional items is only to circumvent the statutory requirement, the time for filing will not be extended. But we think the case before us is controlled by the further rule stated in the *Noland Co.,* case, supra (at pp. 52-53 of 202 Md.) :

'But where a claimant, after a contract is substantially completed, does additional work or furnishes additional material which is necessary for the proper performance of his contract, and which is done in good faith at the request of the owner *or for the purpose of fully completing the contract,* and not merely as a gratuity or act of friendly accommodation, the period for filing the lien will run from the doing of such work or the furnishing of such materials, irrespective of the value thereof. * * *' (Emphasis supplied.)"

Also in disposing of the question, as to whether or not the additional work has to be done at the request of the owner or his agent, this Court continued in 237 Md. 42:

"Thus it is apparent that if the furnishing of the additional work or material is necessary for the proper completion of the contract, it need not be done at the request of the owner."

Accordingly, we hold that the Chancellor was justified in finding that the work and materials supplied by the appellees on September 28th and 29th were necessary for the proper performance of their contracts and that the liens were filed within the six month statutory period.

iii

The last issue to be disposed of, is whether or not the appellees had been paid by Martinez for the work which they had performed and for the materials supplied.

While the record leaves much to be desired regarding the bookkeeping procedure employed by the appellees in their business with Martinez, it is sufficient to justify a finding that it

was what is commonly regarded as a "running open account". See *Mt. Airy Plumbing & Heating, Inc. v. Grey Dawn Development, supra,* at 44, 205 A. 2d 302.

"Generally, if neither party to a running account makes an appropriation the law appropriates the payment according to the justice of the case and usually to the payment of the earliest debt." *Mullan Contracting Co. v. International Bus. M. Corp.,* 220 Md. 248, 256, 151 A. 2d 906, 911 (1959).

It is not to be disputed that the issue of whether or not a debt has been paid in full is a question of fact, *Trader v. Lowe,* 45 Md. 1, 13 (1876), but it is also established that an appellate court may review questions of fact where the court below sat without a jury, in order to satisfy itself that the lower court was not erroneous in its findings. *Gallagher v. Garrett,* 144 Md. 241, 247, 124 Atl. 898, 900 (1923). In order to upset the decree of the Chancellor below on the evidence this Court must satisfy itself that it was clearly erroneous. Rule 886 a. *Eastern Heavy Constructors, Inc. v. Fox, supra.* The issue before this Court is, therefore, whether or not satisfaction of these two liens is patent on the face of the record.

With regard to the lien in favor of County Floor in the amount of $493.00 this Court finds no error. The Chancellor also decreed that Mt. Airy had a lien in the amount of $1,885.00 against the property of the appellants. Neither the opinion nor the decree of the lower court states how this figure was arrived at, but it is apparent from the record that the Chancellor deducted $500.00 (a check dated September 26, 1961, from Martinez to Mt. Airy earmarked to the Deer Park Job) from $2,385.00 (the total contract price). However, an examination of Martinez's "runnning open account" with Mt. Airy reveals that this figure is in error. Martinez's account shows unassigned credits not only sufficient to pay off the Deer Park Job, but other Martinez projects entered subsequently to the Deer Park Job. As stated previously, the law will generally apply unassigned credits to the oldest debits first. There is some evidence in the record that the ledger sheet does not accurately reflect when each of Martinez's contracts with Mt. Airy was made and completed, since debits and credits were not entered on the ledger when made and received; but since the ledger shows that

332

debits equal credits (taking into consideration a credit of $85.00 written off on March 31, 1964, as a bad debt), the fact that the ledger is inaccurate as regards each individual contract is immaterial. Since payment in full is patent on the face of the record, it is the opinion of the Court that the Chancellor's finding of fact on this issue is clearly erroneous and that that part of the decree giving Mt. Airy a lien in the amount of $1,885.00 must be and is hereby reversed.

> *Judgment affirmed as to County Floor Service, Inc.; judgment reversed as to Mt. Airy Plumbing & Heating, Inc., without a new trial; costs to be paid by appellee Mt. Airy Plumbing & Heating, Inc.*